UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO

| | |
|---|---|
| **In re:**<br><br>**Gary Cafferty Smith, and Jacqueline Claire Smith,**<br><br>**Debtors.** | **Bankruptcy Case No. 14-00546-JDP** |

**MEMORANDUM OF DECISION DENYING DEBTORS' OBJECTION TO PROOF OF CLAIM**

**Appearances:**

    Sheila Schwager, HAWLEY TROXELL ENNIS & HAWLEY LLP, Boise, Idaho, Attorney for Idaho Independent Bank.

    Kathleen A. McCallister, Chapter 13 Trustee.

    Gary Smith, Debtor, *pro se.*

### I. *Introduction*

Chapter 13[1] debtors Gary and Jacqueline Smith ("Debtors") object to the third amended proof of claim ("POC") filed in this case by creditor

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION – 1

Idaho Independent Bank ("the Bank").  Dkt. No. 116.  The Bank responded to the objection.  Dkt. No. 118.  Debtors thereafter replied to the Bank's response.  Dkt. No. 120.  A hearing on the objection was conducted on October 19, 2016, after which the Court took the issues under advisement.  Dkt. No. 125.  After a review of the record, and consideration of the parties' submissions, as well as the applicable law, this Memorandum constitutes the Court's findings of fact and conclusions of law, and disposition of any issues raised by Debtors' objection.  Rules 7052; 9014.

## II.  *Facts*

On September 22, 2009, Debtors, along with Jonathan and Rebecca Brougher ("the Broughers"), executed a promissory note in favor of the Bank for the principal sum of $250,000; the note required Debtors to make monthly payments, along with a balloon payment of the full balance due on September 22, 2010.  Dkt. No. 118 Ex. A.

Debtors and the Broughers executed two renewal promissory notes in favor of the Bank, the last one for the principal sum of $237,206.62, with full payment due on August 12, 2013 (the three notes are collectively referred to as "the Loan").  *Id*.

MEMORANDUM OF DECISION – 2

                    Because payments on the Loan were not made when due, late charges were incurred on the Loan totaling $25,442.14. *Id*.

In order to secure their obligations under the Loan, the Broughers granted the Bank a deed of trust on several rental apartments they owned in Canyon County, Idaho ("the Brougher Property"). Debtors also granted deeds of trust to the Bank on two parcels of their real property, and liens on several vehicles, as well as in all inventory, chattel paper, accounts, equipment, and general intangibles ("the Security Agreements"). Finally, Debtors caused several entities[2] they owned to grant the Bank a security interest in those companies' inventory, chattel paper, accounts, equipment, and general intangibles ("the Entity Security Agreements").

Debtors defaulted under the terms of the Loan, and the Bank sought to recover the collateral under the Security Agreements and Entity Security Agreements. To enforce its rights, in early 2014 the Bank filed a civil action against Debtors in state court. *Id*.

Debtors filed this bankruptcy case on April 4, 2014. Dkt. No. 1.

---

[2] Those entities are Tamara's Primos LLC, Smiths Laundromat LLC, Palmtree Estates, Inc., and Neon Construction & Development, LLC.

Case 14-00546-JDP   Doc 129   Filed 12/30/16   Entered 12/30/16 12:45:17   Desc Main
                    Document      Page 4 of 19

On May 20, 2014, the Bank filed its original proof of claim in the bankruptcy case in the amount of $146,759.04. Claims Reg. No. 8-1. Debtors disputed the amount the Bank claimed was due on the Loan, arguing they owed no more than $40,000, and they sought documentation from the Bank to support its claim. Following receipt of the supporting documentation from the Bank, on July 25, 2014, Debtors filed a first amended chapter 13 plan in their bankruptcy case which provided for payment of the Bank's secured claim in the amount of $136,759.04. Dkt. No. 38. The Bank objected to the first amended plan because, *inter alia*, it claimed that the amount it was owed was $152,285.51, which included $9,150.80 in attorneys fees and costs incurred by the Bank. Dkt. No. 46.

Thereafter, Debtors filed a series of further amended plans, all of which proposed to pay the Bank a secured claim of $152,285.51 plus attorneys fees and costs. Dkt. Nos. 53, 70, and 78. Eventually, on April 1, 2015, the Court confirmed Debtors' fourth amended plan which contained detailed provisions for satisfying the Bank's claim. Dkt. No. 78 at 5-6. To signify their agreement, Debtors, their attorney, and the Bank's attorney each approved the confirmation order entered by the Court. Dkt. No. 93.

MEMORANDUM OF DECISION – 4

Shortly prior to confirmation, on March 6, 2015, the Bank had amended its POC to increase the amount owed to $162,678.43.  Claims Reg. No. 8-2.  The difference between the Bank's original POC, and the first amended POC, resulted from a reduction in the principal amount, but the addition of more interest and attorney's fees.  On July 8, 2015, the Bank filed a second amended POC, Claims Reg. No. 8-3, and on March 30, 2016, the Bank amended its POC again, asserting a balance due on its secured claim of $147,047.62, Claims Reg. No 8-4.  The Bank's most recent amended POC applied a credit for the proceeds it received from the sale of a parcel of Debtors' real property, but again added amounts for interest, insurance, late charges, and attorneys fees.

On July 21, 2016, Debtors objected to the Bank's POC.  Dkt. No. 116.  The Bank responded to the objection on August 19, 2016.  Dkt. No. 118.  Debtors objected to the Bank's response, Dkt. No. 120, and that same day, filed an amended objection which included properly scanned exhibits, Dkt. No. 123.  The Court conducted a hearing on Debtors' objection, at which they appeared, along with counsel for the Bank and the Chapter 13 Trustee

MEMORANDUM OF DECISION – 5

Kathleen McCallister.[3]  *See* Minute Entry, Dkt. No. 125.

### III.  *Analysis and Disposition*

Debtors' objection to the Bank's claim is essentially twofold.  First, Debtors argue that the value of the Brougher Property sold by the Bank significantly exceeded the credit given by the Bank to Debtors, such that, had proper credit been given, Debtors' obligation to the Bank should have been satisfied, or at least, the amount due should have been much lower than that asserted by the Bank in the POC.  Second, Debtors object to what they contend is an excessive amount of attorneys fees added to the Bank's POC.  The Court considers each of these arguments in turn below.[4]

**A.    The Amount Due on the Bank's Claim**

   *1.    Standards Applicable to Objections to Proofs of Claim*

---

[3] Subsequent to the hearing, on November 3, 2016, Debtors filed yet another amended objection to the Bank's POC. Dkt. No. 128. Many of the arguments raised in this amended objection are the same as previously advanced and focus upon the credit given applied by the Bank to the Loan for the sale of the Brougher Property. *Id*. To the extent this amended objection raised any new arguments, the Court declines to consider them.

[4] Debtors argue that it was unnecessary for the Bank to file suit against them, which, they contend, forced them into bankruptcy in the first place. The Court declines to consider this argument, since it does not impact the determination of the allowed amount of the Bank's POC.

MEMORANDUM OF DECISION – 6

Under Rule 3001(f), a filed proof of claim "constitutes prima facie evidence of the validity and amount of the claim" which, as provided in §502(a), is deemed allowed unless a party in interest objects. *In re Davis*, 554 B.R. 918, 921 (Bankr. D. Idaho 2016) (quoting *Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000). If an objection to a claim is filed, the Court must determine the amount of the claim as of the date the petition was filed, and allow such claim, unless grounds exist under the Code to disallow it. § 502(b)(1).

The prima facie validity of the proof of claim provided by Rule 3001(f) does not allocate the burden of proof concerning the amount or validity of the debt; it merely operates as a rebuttable evidentiary presumption in favor of the creditor. In other words, while the Rule satisfies the creditor's "burden of going forward" with evidence to support its claim, *In re Garvida*, 347 B.R. 697, 706 (9th Cir. BAP 2006), because the applicable burden of proof "is an essential element of the claim itself [the] one who asserts a claim is entitled to the burden of proof that normally comes with it." *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20–21 (2000).

In this case, state law apportions the burden of proof. *In re West One*

MEMORANDUM OF DECISION – 7

*Mineral, Inc.*, 96.1 IBCR 12, 13 (Bankr. D. Idaho 1996) (in determining the amount of the creditor's claim, the validity of a creditor's claim is determined by rules of state law) (citing *Grogan v Garner*, 498 U.S. 279, 283 (1991)). In Idaho, a creditor bears the burden of proving the amount of its claim. *U.S. Bank Nat. Ass'n N.D. v. CitiMortgage, Inc.*, 337 P.3d 605, 610 (Idaho 2014) ("In general, the party seeking foreclosure has the burden of establishing the existence of the debt and default on that debt.").

    2.    *The Credit Applied to the Loan for the Brougher Property Sale*

Debtors urge that, in the POC, the Bank has failed to give them proper credit for the actual sales price of the Brougher Property. Specifically, while the Bank has represented that the Brougher Property was sold for $200,000, Debtors claim that the sale price was actually $272,000, plus a $5,000 down payment, and $2,599.94 in taxes paid at closing.

As noted above, the Bank bears the burden of proving the amount of its claim. To that end, it provided the Court with evidence showing that the sales price of the Brougher Property was, in fact, $200,000. *See* Settlement Statement, Dkt. No. 118 at 91-95. In addition, the Bank offered

MEMORANDUM OF DECISION – 8

the appraisals of the Brougher Property which were performed just prior to the January 2014 sale, in which Units 404-408 and 1103-1105 were valued at $115,000, Dkt. No. 118 at pp. 26-29, while Units 1109-1111 and 406 were appraised at $93,000, *Id.* at pp. 45-51, for a total appraised value of $208,000.  An addendum to the appraisal reports details numerous maintenance items considered to be "mandatory," which potentially totaled approximately $54,900.  *Id*. at 31-32.  However, the actual repairs ended up being more extensive, and more expensive, than estimated, and the purchaser ultimately spent approximately $80,000 on repairs.  *Id.* at  76.  In the end, the Brougher Property sold for $200,000, and Debtors were initially credited with $137,948,42, and later with an additional $4,431.52.  *Id.* at 20, 72.

Debtors, in their objection, contend that the Bank actually received at least $272,000 for the sale of the Brougher Property.  However, the source of their confusion appears to stem from a modification of the original deed of trust from the buyer to the Bank recorded on December 4, 2014.  Dkt. No. 116, at  2. In response to this argument, the Bank explains that the buyer of the Brougher Property obtained financing from the Bank to

MEMORANDUM OF DECISION – 9

initially purchase the property, and later increased the loan to cover repair costs to rehabilitate the property. The deed of trust modification bears this out. It provides that "[o]n January 31, 2014, Lender made a loan ("Loan") to Borrower . . . in the original principal amount of $182,000.00" which was secured by a deed of trust, and that the original deed of trust was modified to reflect that the "principal balance of the Promissory Note is hereby increased from $182,000.00 to $272,000.00." *Id.*

From the evidence submitted, the Court finds that the Bank has adequately proven that the Brougher Property sold for $200,000, and that credit was given to Debtors accordingly. Debtors have offered no other evidence to dispute either the sale price amount, or the credit applied to the Loan, but instead, have relied on argument and conjecture. Thus, this aspect of their objection lacks merit and is denied.

3.  *Binding Effect of the Debtors' Confirmed Plan*

Debtors' objection to the balance due on the Bank's claim lacks merit for another reason. The Code provides that the "provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has

MEMORANDUM OF DECISION – 10

objected to, has accepted, or has rejected the plan." § 1327(a). In this case, the Bank's allowed secured claim was valued in Debtors' confirmed plan at $152,285.51, and the plan provides for the sale of various collateral, the payment of specific monthly sums during the plan, and directions on how rents and taxes will be dealt with. Dkt. No. 78 at ¶ 5.2. As noted above, the plan was confirmed by the Court on April 1, 2015, and the parties have been operating under its terms ever since. Per § 1327(a), Debtors are bound by the provisions they included in their plan, and they can not dispute the amount owed to the Bank.

There is yet another reason to reject Debtors' complaint about the amount due on the Loan. Generally, res judicata, or claim preclusion, "prohibits lawsuits on 'any claims that were raised or could have been raised' in a prior action." *In re Nicholas*, 556 B.R. 465, 473-74 (Bankr. D. Idaho 2016) (quoting *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)). "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not the relitigation of the claim raises the same issues as the earlier suit.'" *In re*

MEMORANDUM OF DECISION – 11

*Jensen-Edwards*, 535 B.R. 336, 344-45 (Bankr. D. Idaho 2015) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008)); *In re Canyon Mgmt., LLC*, 2015 WL 435049, *3 (Bankr. D. Idaho Feb. 2, 2015).

In order to establish the preclusive effect of a prior court determination, the moving party must demonstrate that there is: "(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." *Stewart*, 297 F.3d at 956 (quoting *Owens*, 244 F.3d at 713); *Ticor Title Co. v. Stanion, II*, 157 P.3d 613, 618 (Idaho 2007) (noting that Idaho law requires "(1) same parties; (2) same claim; and (3) final judgment" to accord preclusive effect). "The burden of proof for res judicata is on the party asserting the affirmative defense and it must prove all of the essential elements by a preponderance of the evidence." *Kootenai Elec. Coop., Inc. v. Lamar Corp.*, 219 P.3d 440, 444 (Idaho 2009). While the mere pendency of a bankruptcy case is insufficient to support the application of claim preclusion or res judicata, when the bankruptcy court confirms a bankruptcy plan, its order is binding on all parties, as discussed above, and all questions that could have been raised pertaining to the plan are entitled to res judicata effect. *In re Pardee*, 193 F.3d 1083, 1085-86 (9th

MEMORANDUM OF DECISION – 12

Cir. 1999).

Here, as reflected in their initial plan, Debtors originally disputed the amount of the Bank's POC. Thereafter, in connection with the treatment they proposed for the Bank's claims in their amended plans, the amount of the Bank's secured claim was negotiated and resolved, as evidenced by the amount listed by Debtors for the Bank's claim in their fourth amended plan. Dkt. No. 78 at ¶ 5.2. In other words, when the Court confirmed Debtors' plan providing that the Bank would have an allowed secured claim of $152,285.51, the terms of that plan were binding on Debtors. Because the parties are the same, the claim is the same, and this Court has issued a final order confirming Debtors' plan, that order is entitled to preclusive effect as to the amount due on the Bank's claim, with the exception of any additional attorneys fees incurred by the Bank post-confirmation. Under these circumstances, Debtors may not now dispute the amount due to the Bank, especially when the events they rely upon giving rise to their contentions took place in advance of even the bankruptcy filing.

MEMORANDUM OF DECISION – 13

    *4.     Judicial Estoppel*

In their objection, Debtors contend that the Bank should be judicially estoppel from arguing that the Brougher Property sold for only $200,000, and then later modifying the deed of trust to indicate a higher purchase price.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001); *An-Tze Cheng v. K&S Diversified Invs., Inc. (In re An-Tze Cheng)*, 308 B.R. 448, 452 (9th Cir. BAP 2004); *In re JZ, LLC*, 357 B.R. 816, 824 (Bankr. D. Idaho 2006).  This Court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of "general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings," and to "protect against a litigant playing fast and loose with the courts." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990).

Debtors' judicial estoppel argument is misplaced.  The Court can

MEMORANDUM OF DECISION – 14

find no representation by the Bank to this Court that the Brougher Property was sold for more than $200,000.  Indeed, the evidence Debtors point to is the amended deed of trust between the Bank and the purchaser of the property.  Not only was this deed not filed with the Court, but the Bank has made no representations of any kind that the Brougher Property sold for more than $200,000.  Accordingly, Debtors have not shown the Bank took an inconsistent position in this bankruptcy case.

Moreover, as discussed above, the modified deed of trust reflects additional amounts loaned to the buyer for repairs to the property.  This occurred subsequent to the initial sale of the Brougher Property for $200,000, by nearly one year.  As such, it does not reflect an inconsistent position, and therefore cannot be the basis for the application of judicial estoppel.

### B.     Attorneys Fees

Debtors challenge the amount of the Bank's claim for attorneys fees. The confirmed plan provided for the Bank's claim in the total amount of $152,285.51 (which already included $9,150.80 in attorneys fees) "plus attorney fees and costs." Debtors, in their objection, calculate the amount

MEMORANDUM OF DECISION – 15

of attorneys fees claimed by the Bank as $12,797,42,[5] and argue that such amount "seems a little excessive when other attorneys that put in claims charged [$]600.00-1,000.00 to put in there [sic] claim."  Dkt. No. 116.

The Code provides:

> [t]o the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

§ 506(b).  In this case, there is both a contractual and a statutory basis to support the Bank's fees.  Idaho Code § 12-120(3) provides:

> In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.
> The term "commercial transaction" is defined to mean all transactions except transactions for personal or household purposes.

The Idaho Supreme Court has applied this statute to an action to recover

---

[5]  Actually, according to the Bank's most recent amended POC, filed on March 8, 2016, the Bank's claim includes a total of $17,624.39 in attorneys fees.

MEMORANDUM OF DECISION – 16

on a note. *Bream v. Benscoter*, 79 P.3d 723, 728 (Idaho 2003) ("Attorney fees are awardable under Idaho Code § 12-120(3) for successfully defending against an action to recover on a note.") (citing *Spidell v. Jenkins*, 727 P.2d 1285 (Ct.App. 1986) (Idaho Code § 12-120 "mandates an award of reasonable attorney fees . . . to the prevailing party in a civil action brought to recover on a note.")). As such, state statute provides a mechanism to support Debtors' responsibility to pay the Bank's attorneys fees in this case.

In addition, each of the promissory notes, as well as the deed of trust, contain an attorneys fee provision requiring the borrower to pay the lender's fees in actions brought on the instrument, as well as any fees and costs incurred in bankruptcy proceedings. Claims Reg. No. 8-1.

Debtors do not dispute the applicability of these provisions, or that the Bank is the prevailing party. Therefore, the Bank is entitled to recover attorneys fees and costs. Of course, § 506(b) only permits the payment of "reasonable" costs and fees. To facilitate the Court in determining whether the amounts claimed by the Bank are reasonable, it provided its counsel's itemized billing statement dated August 17, 2016. Dkt. No. 118, at 101-108.

MEMORANDUM OF DECISION – 17

The Court has reviewed that statement in light of the factors provided in Idaho R. Civ. P. 54(e)(3), and can find no basis to conclude that the number of hours expended, hourly rates charged, or costs incurred are unreasonable. Accordingly, Debtors' objection to the attorneys fees claimed is denied.

/ / / / /

MEMORANDUM OF DECISION – 18

### IV. *Conclusion*

Debtors' objections to the Bank's POC lack merit, as the Bank has submitted adequate evidence to support the amount claimed in the filed POC. Moreover, since Debtors' confirmed plan fixed the amount of the Bank's claims, except for post-petition fees and costs, the Court's confirmation order precludes Debtors from relitigating the amount of the Bank's claim. In addition, the Bank's attorneys fees included in the POC appear to the Court to be reasonable in amount.

Debtors' objection to the Bank's POC is denied. A separate order will be entered.

Dated: December 30, 2016

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 19